## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RICHARD ANTHONY HEMPHILL**                    CIVIL ACTION

**VERSUS**                                                           NO.  13-4768

**MARCO LOPEZ, ET AL.**                               SECTION  "G"(4)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On February 18, 2014, the undersigned conducted an evidentiary hearing, pursuant to *Spears v. McCotter,* and its progeny.[1]

## I.       Background

### A.       The Complaint

The plaintiff, Richard Anthony Hemphill ("Hemphill"), filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983, against Detective Marco Lopez ("Lopez"), St. Tammany Parish Police Chief Benny Raynor ("Raynor"), Pearl River Police Department, Detective Daniel Buckner ("Buckner"), Detective Mike Rummell ("Rummell") and the St. Tammany Parish

---

[1]766 F.2d 179 (5th Cir.1985). The purpose of the Spears Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed.R.Civ.P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir.1991). *See also Miorana v. Gusman,* No. 13-0143, 2013 WL 2404117 (E.D. La. May 31, 2013).

Sheriff's Office.[2] The clerk of this Court filed Hemphill's complaint on June 14, 2013, when pauper status was granted.[3]

Hemphill alleges in his complaint that he was accused of crimes that he did not commit and that he was allegedly placed in the newspaper for the same crimes before the investigation was complete. [4] Hemphill first alleges that law enforcement took some of his tools on February 9, 2012, because his DNA was found at another crime scene.

However, Hemphill alleges that he believes that he was framed by detectives placing charges on him because they claimed to have his DNA. Although he claims that the detectives took his DNA in March, 2012, while he was in jail. Hemphill also alleges that all the detectives on the case harassed him and his family, as they searched his brother James Moore's out of state home without a warrant.

Hemphill also alleges that he was again arrested on January 28, 2013, and was held in the St. Tammany Parish Jail by Detective Lopez.[5]  He alleges that his fiancé spoke with Pearl River Police Department's Chief of Police Benny Raynor, ("Chief Raynor") who allegedly told her that Detective Lopez had a hold on Hemphill for questioning. As a result, Hemphill filed a formal complaint with Pearl River Police Department for some of his personal property that he alleges was stolen, and for the charges against him to be dropped.

Hemphill alleges that he was summoned for arraignment on March 18, 2012, and that the

---

[2]Rec. Doc. Nos. 1, 2, and 3.

[3]Rec. Doc. Nos. 2 and 3.  In the prisoner context, however, the date prison officials receive the complaint from the prisoner for mailing to the court is the time of filing for limitations purposes, which here was on June 4, 2013. *Medley v. Thaler*, 660 F.3d 833, 835 (5th Cir. 2011); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).

[4]Rec. Doc. No. 1, p. 5.

[5]*Id.* at p. 6.

charges were dismissed on May 21, 2012. Although unclear from the complaint, it seems as though Hemphill remained incarcerated throughout 2013, as he alleges that once he filed a complaint for his property back, the charges that were dismissed were allegedly brought "back up."

Further, Hemphill alleges that on June 4, 2013, Detective Lopez came to the jail and placed more charges on him due to his complaint.[6] He alleges that following his complaint, he was also questioned. Hemphill alleges that his company has been ruined due to the advertisement in the newspaper about the charges and investigation of him, and that his family has since been evicted from their home.

As a result, Hemphill seeks monetary damages for his alleged loss of property, for slander, defamation of his character, lost wages, and for pain and suffering. Hemphill also seeks injunctive relief in that he seeks for his criminal record to be cleared, and for disciplinary action to be taken against all parties so that this type of situation will not occur to other people.[7]

**B.**     **The *Spears* Hearing**

On February 18, 2014, the undersigned conducted an evidentiary hearing, pursuant to *Spears v. McCotter*, and its progeny,[8] with the plaintiff and counsel for the defendant participating by conference telephone call.[9]   During the hearing Hemphill provided further explanation and reiteration of his claims to the Court.

During the hearing, Hemphill indicated that on or around February 2012, Pearl River County Police Department Detective Marco Lopez ("Detective Lopez"), among other detectives and

---

[6]*Id.* at p. 6-7.

[7]*Id.* at p. 5.

[8]766 F.2d 179 (5th Cir.1985). *See supra,* n. 1.

[9]Rec. Doc. No. 6.

3

officers, came to his home in Mississippi to search for stolen utility property, which consisted of phone wires from an AT&T Store in Slidell, Louisiana, from January 1, 2011 through July 18, 2011. Hemphill alleges that Detective Lopez allegedly told the Sheriff of Pearl River that Hemphill was wanted by police in three different states for theft of stolen property. He alleges that a search of his property was conducted and because phone wires were found, he was arrested on February 9, 2012. He was transferred to Pearl River Police Department on or around February 14, 2014.

Hemphill alleges that sometime between his arrest and his subsequent transfer to Pearl River, AT&T allegedly came to his property in Mississippi, inspected the wire cables that police claimed were stolen, and found that the serial numbers on the wires did not match the numbers of the wires which were stolen. He also indicated that the Mississippi cops, after searching his home, verified that the wires he was in possession of were not stolen property, and were validly purchased. Even though he alleges that it was proven that he did not have stolen equipment, Hemphill alleges that he was charged with three counts of unauthorized entry of a place of business and three counts of theft of utility property over $100.

Hemphill alleges that while he was in a holding cell, Detective Buckner and Rummell questioned him regarding his knowledge about drug dealers and crimes going on around Slidell, Louisiana. He alleges that when he told the officers that he did not know anything about drug crimes, the detectives went to Judge Badeaux, and requested that a $100,000 bond be placed on him. Hemphill alleges that this was problematic because his bond was supposed to be set by the Commissioner's court, and not an independent judge. He also complained that the bond set was too high in relation to the charges he faced of three counts of stolen utility property.

Hemphill went on to state that he could not pay the $100,000 bond, therefore, he obtained

an attorney and had a bond reduction hearing, where his bond was reduced to $50,000. At this hearing, he alleges that only one charge of theft of property over $100.00 was accepted against him. He alleges that this charge remains pending to this date.

On or around March 12, 2012, he alleges that Detective Lopez placed additional charges of simple burglary and theft of a vehicle over $1,500, against him; which added $10,000 to his already existing $50,000 bond. He alleges that on March 22, 2012, he was bonded out. However, Hemphill alleges that on April 12, 2012, although he had already posted bond on the previous charges, Detective Lopez attempted to "place additional charges" on him for possession of stolen property and possession of a stolen vehicle because his DNA was allegedly found at a crime scene. On May 22, 2012, though, Hemphill alleges that the charges of simple burglary and stolen property were dropped against him.

Upon questioning by the Court, Hemphill alleges that he was again brought in for questioning on January 28, 2013, and ultimately arrested by Detective Lopez, for possession of stolen property. Hemphill alleges that after Detective Lopez searched his home, he confiscated his lawnmower, electric power tools, GPS systems, and welding equipment, among other items of his personal property.

Hemphill alleges that on January 28, 2013, he was told that he was only being brought to the St. Tammany Parish Sheriff's Office for questioning. However, he alleges that after he got there, Detective Lopez placed a hold on him that prohibited his release. Hemphill also alleged that during this time period, Detective Lopez allegedly told him that he was going to get him transferred to Pearl River County, so that he could "do what he wants with him." Hemphill alleges that after being told this by Detective Lopez he told his fiancé what was said, and she contacted Chief Raynor, who

placed a hold on Hemphill's ability to be transferred to Pearl River. Therefore, he remained and continues to remain incarcerated in the St. Tammany Parish Jail.

Upon further questioning by the Court, Hemphill clarified that his suit against Pearl River Police Department is being brought because after he was allegedly told that he was only being brought in for questioning on January 28, 2013, but was not released and remains in jail to date because of Detective Lopez.

Hemphill further clarified that his claims against Chief Raynor were because his fiancé contacted him regarding his release in January 2013, after Detective Lopez placed a hold on him in St. Tammany Parish Jail.

Hemphill alleges that he named Detectives Buckner and Rummel, who are St. Tammany Parish detectives, as defendants because they brought the first charges of possession of stolen utility property against him on March 6, 2012. He alleges that these detectives also told Pearl River officials that they had warrants for Hemphill's arrest, and held him on a $100,000 bond because he did not give them any information on other crimes.

Hemphill also alleges that the arrest warrants Rummel and Buckner had on him were falsified. He alleges that when discovery took place as to the crimes Detectives Buckner and Rummel arrested him for, it was revealed that two witnesses allegedly provided sworn statements that Hemphill was involved in two separate crimes. Therefore, Hemphill's fiancé allegedly contacted the two witnesses. Hemphill alleges that the witnesses told his fiancé that they never spoke to Detectives Buckner and Rummel.

As such, Hemphill alleges that Detectives Buckner and Rummel falsified these affidavits so that they could search Hemphill's property after it was established that he had not stolen the phone

wires. Therefore, on April 11, 2013, Hemphill alleges that he filed a preliminary motion for the charges of theft of utility to be dismissed on the grounds that no sworn affidavits were provided to obtain the original search warrants.

However, on April 22, 2013, Hemphill alleges that St. Tammany Parish officials filed a bill of information bringing back the simple burglary and theft of vehicle charges that had been previously dismissed.  Hemphill alleges that on June 11, 2013, the prosecuting District Attorney indicated that he would null process the simple burglary and theft of vehicle charges if Hemphill could show him proof of title to the allegedly stolen vehicle. Hemphill alleges that the District Attorney also indicated that he would null process the theft of utility charges.

Before his fiancé was able to provide proof of title to the district attorney's office, Hemphill alleges that on June 4, 2013, he filed the instant 42 U.S.C. § 1983 action against the named defendants. As a result of the filing of this complaint, Hemphill alleges that his June 24, 2013 trial date, where all the charges against him would be dropped, was continued until September 10, 2013. He contends that this date was again moved and has not been reset.

Further clarifying his claims against Detective Lopez, Hemphill alleges that on May 14, 2013, he filed a formal complaint with the Pearl River Police Department, alleging that Detective Lopez filed improper charges against him and stole his personal property. Shortly after filing this complaint, on June 4, 2013, Hemphill alleges that Detective Lopez allegedly came back and charged him with aggravated criminal damage and aggravated destruction of property, for damages that allegedly occurred to copper wiring on a train track, because his DNA matched some items found at the scene of the crime.

However, Hemphill alleges that the newest charges against him brought by Detective Lopez

are fabricated and in response to the complaint he filed with Pearl River against him. Specifically, Hemphill alleges that although the aggravated criminal damage charges arose out of a crime that occurred in April 2011, the incident report on these new charges was not filed until June 27, 2013. Furthermore, he alleges that the incident report on these charges mimicked the complaint he filed with Pearl River against Detective Lopez, and stated that a luxury counter top company in Pearl River had reported stolen equipment, which is why they searched Hemphill's property. He also alleges that all of these charges are still pending.

As a result, Hemphill indicated that he sought monetary damages for what has happened to him, return of the property confiscated by Detective Lopez, and disciplinary action against Detective Lopez for the simple burglary theft he brought against Hemphill on April 22, 2013, and the remaining charges of aggravated criminal charges he brought against him on July 22, 2013. He remains incarcerated in the St. Tammany Parish Jail, and has a bond for $90,000 set for the charges of simple burglary and theft of a vehicle.

## II.    <u>Standard of Review</u>

Title 28 U.S.C. §§ 1915A and Title 42 U.S.C. §§ 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).

A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III.   Analysis

### A.   Claims Against Improper Defendants St. Tammany Parish Sheriff's Office & Pearl River Police Department

Hemphill names the St. Tammany Parish Sheriff's Office and the Pearl River Police Department as defendants in this proceeding. However, neither named defendant are "persons" within the meaning of Title 42 U. S. C. § 1983.

Title 42 U.S.C. § 1983 imposes liability on any "person" who violates someone's constitutional rights "under color of law." Title 42 U.S.C. § 1983; *see Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989). In accordance with Rule 17(b) of the Federal Rules of Civil Procedure, Louisiana law governs whether these defendants can be sued.[10] Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "an entity to which the law attributes personality, such as a corporation or

_____

[10]Rule 17(b) of the Federal Rules of Civil Procedure provides that "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." *See* Fed. R. Civ. P. 17(b).

partnership." La. Civ. Code Ann. art. 24.

Thus, under federal law, a county (or parish) sheriff's office or police department is not a "person" within the meaning of Rule 17. *Cullen v. DuPage County*, No. 99C1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); *Whitley v. Westchester County Corr. Facility Admin.*, No. 97CIV0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); *Powell v. Cook County Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993). Therefore, the sheriff's office has no legal capacity to be sued. *See e.g., Burge v. Parish of St. Tammany*, 187 F.3d 452, 470 (5th Cir.1999) (citing *Jenkins v. Jefferson Parish Sheriff's Office*, 402 So.2d 669, 671 (La.1981); *Riley v. Evangeline Parish Sheriff's Office*, 637 So.2d 395 (La.1994)). *See also Davis v. E. Baton Rouge Parish Sheriff's Office,* No. 08-C-708, 2010 WL 4962812 (M.D. La. Dec. 1, 2010).

Thus, the St. Tammany Parish Sheriff's Office and the Pearl River Police Department are not proper defendants in this case. Accordingly, Hemphill's claims against the defendants should be dismissed with prejudice as frivolous and for failure to state a claim for which relief be granted pursuant to § 1915(e), § 1915A, and § 1997e. *See Jones v. St. Tammany Parish Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998)(dismissing with prejudice the St. Tammany Parish as improper defendant).

### B.      Claims against Chief of Police Benny Raynor

Hemphill has named St. Tammany Parish Police Chief Benny Raynor ("Raynor") as a defendant in this matter for his role as a supervisory official over Detective Lopez.

A supervisory official, like Raynor, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate at the prison allegedly violated the plaintiff's constitutional rights. *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Raynor may only be

liable under § 1983 if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (citing *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976)); *see also Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120 (5th Cir. 1980). This personal involvement also must include a showing of deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

Although Hemphill alleges that his fiancé contacted Raynor regarding the hold placed on him by Detective Lopez in January 2013, Lopez works for Pearl River Police Department and is not an employee of St. Tammany Parish, or Chief Raynor. Furthermore, Hemphill does not allege that Raynor himself was personally involved in the alleged unconstitutional acts of Detective Lopez. In fact, Hemphill indicated during the *Spears* hearing that Raynor prevented Detective Lopez from having him transferred from St. Tammany Parish to Pearl River, because Hemphill was fearful of his safety. Furthermore, Hemphill does not allege that he suffered any direct injury as a result of any directive by Raynor which could create vicarious liability. *See Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). These allegations alone are an insufficient basis to state a claim under § 1983. Thus, Hemphill's § 1983 claims against Raynor are frivolous and otherwise fail to state a claim for which relief can be granted under 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e.

C.   **The *Heck* Doctrine and Hemphill's Claims against the Detectives**

Hemphill has named Detectives Marco Lopez ("Lopez") of the Pearl River Police

Department, Daniel Buckner ("Buckner") and Mike Rummell ("Rummell") of the St. Tammany Parish Sheriff's Office. He generally alleges that these detectives unconstitutionally detained, arrested and held him in prison for charges he did not commit. Because his claims directly challenge the validity of his current confinement and pending charges, any remaining portions thereof are barred from review under § 1983 at this time.

In *Heck v. Humphrey*, the Supreme Court held that a claim under § 1983 is barred if success in the suit would necessarily imply the invalidity of an outstanding criminal conviction or his present confinement. *Heck v. Humphrey*, 512 U.S. 477 (1994). Before a plaintiff may proceed under § 1983 on claims challenging a criminal conviction or proceeding, he must show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."*Heck*, 512 U.S. at 486-87; *see also Jackson*, 49 F.3d at 177; *Stephenson v. Reno*, 28 F.3d 26, 27-28 (5th Cir. 1994). *See also Green v. Dist. Attr's Office,* No. 08-3685, 2009 WL 651132 (E.D. La. Mar. 10, 2009).

The same consideration was later considered in the context of a pretrial detainee in *Mackey v. Dickson*, 47 F.3d 744 (5th Cir.1995). The *Mackey* court instructed that, in the case of a pretrial detainee, if it is premature to determine whether the § 1983 claims for damages are barred by *Heck*, the district court should stay the proceedings until the pending case has run its course and the Court can determine the relationship between the claim and the conviction. *Mackey*, 47 F.3d at 746.

Here, Hemphill's conviction has not been successfully challenged in any of these manners. In fact, Hemphill bases his claims here on the fact that he has not received relief from his conviction. A ruling in this case regarding the validity of his guilty plea and the propriety of the subsequent

12

rulings by the state trial court on post-conviction review would impact the validity of Hemphill's present confinement. His claims, therefore, fall within the *Heck* bar. His civil rights claims are not cognizable at this time and must be dismissed with prejudice until such time as the *Heck* conditions are met. *Johnson v. McElveen*, 101 F.3d 423 (5th Cir. 1996) (dismissal under *Heck* is with prejudice).

Furthermore, although Hemphill has not expressly asked this court to release him from his current confinement, his claims sound in habeas corpus. However, this civil rights proceeding is not the appropriate place to pursue that type of relief. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Clarke v. Stalder*, 121 F.3d 222, 226 (5th Cir. 1997), *reh'g en banc granted and op. vacated*, 133 F.3d 940 (5th Cir. 1997), *rev'd in part on other grounds and op. reinstated in relevant part*, 154 F.3d 186, 187 (5th Cir. 1998) (*en banc*); *Hernandez v. Spencer*, 780 F.2d 504, 504 (5th Cir. 1986). As required by *Heck*, Hemphill must first pursue any such habeas corpus claims in a properly filed state post-conviction application or federal habeas corpus proceeding if appropriate.

Therefore, the Court must dismiss with prejudice Hemphill's § 1983 claims challenging the validity of his state court proceedings until such time as the *Heck* conditions are met. *See Johnson*, 101 F.3d at 423. His claims are therefore frivolous and otherwise fail to state a claim for which relief can be granted.

## IV. <u>Recommendation</u>

It is therefore **RECOMMENDED** that Hemphill's § 1983 claims against Detective Marco Lopez, St. Tammany Parish Police Chief Benny Raynor, Pearl River Police Department, Detective Daniel Buckner, Detective Mike Rummell and the St. Tammany Parish Sheriff's Office be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which

relief can be granted pursuant to 28 U.S.C. §§ 1915(e), 1915A and 42 U.S.C. §1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[11]

New Orleans, Louisiana, this 23rd day of June, 2014.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[11]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

14